# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:16-CV-00798-FDW

| | |
|---|---|
| SHAYLA RICE, | ) |
| **Plaintiff,** | ) |
| v. | ) **ORDER** |
| NANCY A. BERRYHILL[1], | ) |
| **Defendant.** | ) |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 16) and Defendant's Motion for Summary Judgment (Doc. No. 19). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits under 42 U.S.C. § 405(g) (2012). For the reasons that follow, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and the Commissioner's decision is AFFIRMED.

## BACKGROUND

The procedural history of this case is undisputed. Plaintiff filed the application at issue in this case for Disability Insurance Benefits ("DIB") on July 26, 2012. (Tr. 21, 199). The application was denied initially on December 18, 2012, and then again denied upon reconsideration on March 26, 2013. (Tr. 127,135). Plaintiff alleged that she become disabled with an onset date of April 30, 2010, due to depression, anxiety, and rheumatoid arthritis. (Tr. 218). Plaintiff requested a hearing before an administrative law judge ("ALJ") where she, represented by counsel, appeared and gave

---
[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action is necessary to continue this suit. *See* 42 U.S.C. §405(g).

1

testimony before the ALJ. (Tr. 40-64). The hearing also included testimony from a vocational expert ("VE"). (Tr. 59-64). The hearing decision was issued by the ALJ on April 13, 2015, denying her application for DIB. (Tr. 18-39). Plaintiff then requested the Appeals Council review of the ALJ's decision, and the Appeals Council denied Plaintiff request for review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-7). Plaintiff then brought the instant suit before this Court and this case is now ripe for judicial review pursuant to Section 205(g) of the Act, 42 U.S.C. § 405(g).

In reaching his decision, the ALJ used the five-step sequential evaluation process for the evaluation of claims for DIB. (Tr. 18-39); see also 20 C.F.R. § 404.1520(a)(4). On step one of the process, the ALJ found Plaintiff had engaged in work after her alleged onset date, but this work did not arise to a level sufficient to be considered substantial gainful employment. (Tr. 23). At step two, the ALJ found Plaintiff had the following severe impairments: rheumatoid arthritis, a mood disorder, and an anxiety disorder. (Tr. 23). On step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings. (Tr. 23-25).

At step four, the ALJ found that despite Plaintiff's impairments she could perform light work and was limited to the following:

> [f]requent handling and fingering bilaterally; sitting and standing in one-hour intervals; occasional climbing ladders; frequent climbing of stairs, balancing, stooping, kneeling, crouching, and crawling; with no concentrated exposure to hazards such as moving machinery or unprotected heights; and she is limited to unskilled work that involves no more than occasional public contact in a stable work environment, without frequent changes (Tr. 25).

Also, at step-four the ALJ determined Plaintiff could no longer perform her past relevant work. (Tr. 32). At step-five, the ALJ determined that in light of Plaintiff's RFC, age, education, work experience, and the VE's testimony, Plaintiff could perform jobs existing in significant numbers

2

in the national economy. (Tr. 33-34). Those jobs included the representative light level jobs of marker, inspector, hand packager, and small products assembler. (Tr. 34). Pursuant to the reasons stated above, the ALJ found Plaintiff was not disabled under the Act. (Tr. 34).

## **STANDARD OF REVIEW**

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), restricts and narrows this Court's review of a final administrative decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). It is not the role of the District Court to reweigh conflicting evidence or make any credibility determinations regarding that evidence because "it is not within the province of the reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The District Court does not review a final decision of the Commissioner *de novo*. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d. 585, 589 (4th Cir. 1996) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966)). Even in instances where a reviewing court would have come to a different conclusion than the Commissioner, the reviewing court must uphold the decision of the Commissioner so long as the Commissioner's decision is supported by substantial evidence. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1972); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Pursuant to Section 205 (g) of the Social

Security Act, the findings of the Commissioner, if supported by substantial evidence, shall be conclusive.

The Social Security Act sets forth a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a)(1). Step one requires the ALJ to make a determination as to whether the claimant is engaged in substantial gainful activity (SGA); if claimant is engaged in SGA, he will be found not disabled. Id. § 404.1520(a)(4)(i). Step two is to determine whether the claimant has a severe medically determinable physical or mental impairment or a combination of impairments that is severe and meets the duration requirement. Id. § 404.1520(a)(4)(ii). Step three assesses whether the claimant's impairment or combination of impairments meets or medically equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, if the claimant does meet one of the listings, then the claimant will be found disabled. Id. § 404.1520(a)(4)(iii). Step four determines whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work. Id. § 404.1520(a)(4)(iv). Finally, step five considers whether the claimant is able to make an adjustment to other work, considering claimant's RFC, age, education, and work experience. Id. § 404.1520(a)(4)(v). Plaintiff bears the burden of proof through the first four steps. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

## **ANALYSIS**

On appeal to this Court, Plaintiff makes three assignments of error. First, Plaintiff argues the ALJ's RFC analysis is not supported by substantial evidence. (Doc. No. 17, p. 4). Second, Plaintiff argues the ALJ preformed an improper credibility analysis under step-four by expressing Plaintiff's RFC prior to conducting a function-by-function analysis to determine credibility. Id. Third, Plaintiff argues the Commissioner failed to meet her burden under step-five of the sequential evaluation process because the ALJ failed to pose a proper hypothetical question to the VE. Id. For the reasons stated

4

below, this Court finds both that there is substantial evidence to support the conclusions of the ALJ, and that the ALJ used the correct legal standards in reaching those conclusions.

## I. The ALJ's RFC Analysis

Plaintiff argues under her first assignment of error that the ALJ failed to properly assess her RFC for the following reasons: (1) the ALJ's RFC did not provide for any limitations for Plaintiff's moderate difficulties in concentration, persistence and pace (CPP); (2) the ALJ did not adequately explain why he did not rely on certain medical records; and (3) the ALJ failed to adequately explain why he gave little weight to Plaintiff's treating physician's opinion. (Doc. No. 17).

### a. Moderate Limitations

Plaintiff alleges the ALJ did not fully account for her moderate limitations in CPP in formulating her RFC. (Doc No. 16, p. 5). Plaintiff cites Mascio in her brief, where the Fourth Circuit stated that remand "may be appropriate" if the ALJ does not address conflicting evidence as to the claimant's RFC. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). The facts of the instant case, however, are distinguishable from Mascio making remand inappropriate.

The Fourth Circuit in Mascio found remand to be appropriate because "the ALJ here gave no explanation, a remand is in order." Id. at 638. Here, the ALJ explicitly stated the basis for his findings that Plaintiff had moderate limitations in CPP. (Tr. 25-29). Furthermore, Plaintiff's RFC included the appropriate limitations for Plaintiff's specific limitations in CPP found by the ALJ. (Tr. 26).

The ALJ stated in his decision that Plaintiff had no reported difficulties in concentrating, following instructions, understanding, or with memory. (Tr. 25). Further, the ALJ noted that during Plaintiff's psychiatric evaluation of her mental limitations alleged, Plaintiff had good concentration, persistence, and pace. (Tr. 29). The ALJ went on to note Plaintiff had not sought mental health care from a psychiatrist or counselor since 2012, and that her mental status

5

examinations documented fairly normal findings. (Tr. 29). Furthermore, the ALJ examined the treatment record showing the psychotropic medications for Plaintiff's mental symptoms were indicated to be successfully controlling and treating those symptoms. Id. Further, the ALJ noted the daily activities performed by Plaintiff such as shopping, cooking, cleaning, caring for her young children, and caring for a cat. (Tr. 26). These activities are inconstant with the debilitating limitations alleged, and the ALJ was correct in considering them to formulate Plaintiff's RFC. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (holding claimant performed a wide range of housework). Despite these multiple contradictions as to the extent of the mental limitations alleged by Plaintiff, the ALJ took note of Plaintiff's subjective reported difficulties in finishing what she starts and her ability to handle stress well. (Tr. 25). Hence, the ALJ based his finding of moderate limitations in part on Plaintiff's reports, despite finding contradictory evidence making them not overly credible. (Tr. 25). Therefore, the instant case is distinguishable from Mascio in that the ALJ explicitly explained Plaintiff's moderate limitations using her reports, the psychiatric evaluation, her treatment notes, and other objective evidence contained within the record. (Tr. 25).

SSR 85-15 requires incorporation of "any impairment related limitations created by an individual's response to demands of work" to be reflected in the RFC. 1985 WL 56857 at *6. The ALJ, after finding Plaintiff's particular moderate mental difficulties, then accommodated them into the RFC that Plaintiff was assessed. (Tr. 30). Contrary to Mascio, where the ALJ there "said nothing about Mascio's mental limitations," and the RFC finding limited the claimant to merely "unskilled work," id. at 637, the RFC finding here limited Plaintiff to (1) unskilled work, (2) with no more than occasional public contact, (3) in a stable environment, and (4) with no frequent changes (Tr. 30). These inclusions in the RFC, expressed directly after a full analysis of Plaintiff's

moderate mental limitations, make it clear that the stated RFC did properly account for Plaintiff's moderate limitations in CPP.

### b. Plaintiff's Symptoms

Plaintiff argues the ALJ did not properly evaluate Plaintiff's symptoms through both failing to adequately explain his not relying on certain medical records, and conversely, why certain records he did give greater weight undermined her allegations. (Doc. No. 16, p. 8-10). The Fourth Circuit has explained:

> Social Security Ruling 96-8p explains that the RFC "'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Id. (quoting SSR 96-8p, 61 Fed. Reg. at 34,478); see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). From this, Plaintiff argues the ALJ failed to explain how the normal medical findings cited in his decision show that she did not experience her symptoms to the extent alleged. (Doc. No. 16, p. 9).

The Fourth Circuit in Monroe found that the ALJ failed to explain why he believed objective findings such as a normal EEG and normal respiratory tests supported a finding that the plaintiff did not experience extreme fatigue and loss consciousness two to three times daily due to narcolepsy. Monroe, 826 F.3d at 189-90. In Monroe failed to explain the connection between how these normal tests were related to the plaintiff's alleged symptoms. Id. The connection between narcolepsy and the tests showing normal respiration did not have a direct logical relationship, thus the court in Monroe was left, in the absence of an explanation from the ALJ, to discern the connections between the tests and the alleged symptoms on their own.

7

In the instant case, however, the evidence cited by the ALJ does have a direct and logical relationship to the symptoms alleged by Plaintiff. For instance, while Plaintiff has alleged significant difficulty using her hands, an inability to move her joints, and pain and swelling in her hands, wrists, feet, and ankles, the ALJ cited objective findings showing she in fact had a normal range of motion in these joints as well as a normal gait and no neurological findings, indicating normal sensation in her hands and feet. (Tr. 28-30, 397-399, 411, 444, 448, 502, 510, 517). These objectives findings in the record relied on by the ALJ are directly and logically tied to the alleged symptoms of Plaintiff. Further, the ALJ addressed Plaintiff's complaints of having difficulty in opening jars, folding clothes, or doing other activities with her hands and cited to evidence showing minimally decreased grip strength, normal range of motion in her wrists, hands, and arms, no problems with pronounced dexterous ability, and no pronounced difficulty getting dressed. (Tr. 27-28). The evidence cited by the ALJ makes it clear there is substantial evidence in the record that directly contradicts Plaintiff's allegations.

Plaintiff, in her assignment of error, points to the ALJ's conclusion that there was no significant objective evidence to support her alleged difficulties handling objects. (Doc. No. 16). In the hearing decision, however, the ALJ stated Plaintiff's complaints were found in the treatment records. The ALJ explained the complaints were simply contradicted by the medical examination that showed Plaintiff demonstrated no pronounced dexterous limitations, was able to get dressed, and had a normal range of motion in her hands. (Tr. 28, 396-99). Hence, Plaintiff's complaints have been noted by the ALJ in his decision; however, they have been given less weight because they are contradicted by, or inconsistent with, other objective evidence in the record.

Next, Plaintiff argues the medical records recording her complaints of being bed ridden for days at a time due the medications she was on were not afforded adequate weight by the ALJ.

8

(Doc. No. 16, p. 9-11). Again, the ALJ noted the subjective complaints by Plaintiff in the record; however, the ALJ goes on to cite substantial evidence in the record that contradicts Plaintiff's allegations. (Tr. 28-29). Specifically, the ALJ acknowledged Plaintiff had tried several medications and had complained of fatigue and side effects, but also pointed to evidence establishing that she reported no such effects of Remicade, her most recent medication which she had been on for roughly one year at the time of the hearing. (Tr. 28, 51, 480-82). Plaintiff has failed to identify any evidence that undermines the ALJ's finding that Plaintiff's current, long-term medication plan has been effective at treating her symptoms without the alleged side effects. (Doc. No. 16, p. 10). Plaintiff has only pointed to side effects of earlier medications that she no longer takes.

The ALJ evaluated both Plaintiff's subjective complaints, as well as the full evidence in the record. The ALJ also considered the objective evidence within the record as contradicting, or being inconsistent with, Plaintiff's allegations. (Tr. 26-28). Additionally, the ALJ considered the inconsistency between Plaintiff's daily activities such as caring for her children, working part-time, and doing household chores, with Plaintiff's reports of extreme fatigue and significantly restricted activities. (Tr. 32, 268-75). Thus, the ALJ's findings are both properly explained and based on substantial evidence.

    c. **Dr. Alkassab's Opinion**

Plaintiff also argues the ALJ failed to properly assess and explain his rejection of Dr. Alkassab's medical opinion. (Doc. No. 16). After a review of the ALJ's hearing decision, however, the ALJ appears to have properly afforded less weight to Dr. Alkassab's opinion due to his opinion having been contradicted by, or inconsistent with, other evidence in the record.

Dr. Alkassab's opinion said, in part, that Plaintiff would likely miss more than four days of work per month. (Tr. 439). Additionally, Dr. Alkassab's opinion stated that due to Plaintiff's issues with side effects from her medications, this would further propel her symptoms. (Tr. 437-39). In examining Dr. Alkassab's medical opinion, the ALJ considered the treatment notes stating Plaintiff had no problems with pronounced dexterous ability and had some tenderness, swelling, and synovitis, but had a normal range of motion and normal sensation. (Tr. 28, 396-99). The ALJ also explained the treatment notes did show improvement with her more recent and current medication, Remicade. (Tr. 30). Plaintiff assigns error to this conclusion specifically, stating that she has complained of side effects from her medications. The ALJ acknowledged these complaints, however, he noted that the complaints were due to her past medications and that by March 2014, the time of Dr. Alkassab's opinion, she reported an improvement in her symptoms from her current medications. (Tr. 28, 474). The ALJ notes the treatment notes regarding Plaintiff's most recent medications, specifically Methotrexate and Remicade, showed both continued improvement in the management of her symptoms and the side effects from the medications themselves. (Tr. 28, 448-82).

Hence, the treatment notes and other objective evidence in the record cited by the ALJ in his decision show that Dr. Alkassab's opinion was unsupported by, and often inconsistent with, the other objective evidence in the record. Therefore, the ALJ's explanation of the other evidence in the record as compared to Dr. Alkassab's opinion, adequately explained why Dr. Alkassab's opinion was given less evidentiary weight and was incorporated into his decision as such.

## II. RFC Analysis

Plaintiff contends the ALJ erred in stating Plaintiff's RFC prior to conducting a credibility analysis, however, this Court finds such error to be harmless in the instant case. (Doc. No. 16).

The error is harmless because, while the RFC was stated first, the ALJ properly analyzed Plaintiff's credibility elsewhere by looking at the evidence in the record.

Plaintiff cites <u>Mascio</u> in arguing that the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." <u>Mascio</u>, 780 F.3d at 636 (quoting SSR 96-8p, 61 Fed. Reg. at 34,475). <u>Mascio</u>, however, does not adopt a rule requiring "per se reversal for errors in expressing the RFC before analyzing the claimant's limitation function by function. . . ." <u>Id.</u> at 636. Particularly, the Fourth Circuit noted that the ALJ in that case "[s]hould have compared Mascio's alleged functional limitations from pain to the other evidence in the record, not to Mascio's residual functional capacity." <u>Id.</u> at 639. Hence, the Fourth Circuit requires reversal only if the ALJ does not, either before or after the expressing of the RFC, compare the alleged functional limitations to the other evidence in the record rather than solely comparing the allegations with the RFC. <u>Id.</u> Lastly, the Fourth Circuit notes, "[T]he ALJ's error would be harmless if he properly analyzed credibility elsewhere. But here, the ALJ did not" and therefore "[t]he ALJ's lack of explanation requires remand." <u>Id.</u> at 639-40. In the instant case, however, the ALJ conducted a proper credibility analysis elsewhere, making remand inappropriate.

Plaintiff contends the ALJ's credibility analysis concerning her alleged limitations following the statement of the RFC was inadequate. (Doc. No. 16, p. 12). Specifically, Plaintiff argues, as she did earlier in her brief, that the ALJ failed explain why he did not give more weight to both Dr. Alkassab's opinion and to the alleged severity of her rheumatoid arthritis. (Tr. 28-29). Additionally, Plaintiff takes issue with the ALJ's use of her daily activities such as shopping, cooking, cleaning, caring for her young children, and caring for a cat, as a being contradictory to the alleged severity of her symptoms. (Doc. No. 16, p. 12-13).

11

As previously noted, the ALJ's decision to give less weight to Dr. Alkassab's opinion was proper because his opinion was contradicted by, or inconsistent with, other objective evidence in the record. The treatment notes indicted Plaintiff was improving under her recent medication regime. (Tr. 30). The treatment notes cited by the ALJ also noted Plaintiff had no problems with pronounced dexterous ability and had some tenderness, swelling, and synovitis, but had a normal range of motion and normal sensation. (Tr. 28, 396-99). The ALJ specifically noted the consistent reports of improvement of Plaintiff's symptoms, and the noticeable lack of evidence in the rheumatology records to support the alleged severity of her limitations caused by her rheumatoid arthritis. (Tr. at 27). For these reasons. and those already stated earlier in this order, the ALJ properly explained how the other objective evidence in the record merited the affording of less weight to both Dr. Alkassab's opinion and the alleged severity of her symptoms.

Concerning Plaintiff's daily activities being used to assess her limitations, the ALJ properly considered the fact that she reports doing activities such as cooking, cleaning, caring for her young children, shopping, and caring for a cat. (Tr. 26). The Fourth Circuit has recognized that a claimant's daily activities may support a determination as to their disability. Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994). The ALJ notes the allegations Plaintiff raises, specifically, her need for some assistance in doing some of the chores and her inability to do certain hobbies as well as she did before. (Tr. at 29). However, Plaintiff's daily activities, along with her part-time work, as explained by the ALJ, show these are not the activities of a completely disabled person. Accordingly, Plaintiff's allegations are given lesser credibility. (Tr. at 29).

The ALJ did not limit his credibility analysis to vague, boilerplate language, nor was it based on solely comparing the allegations to Plaintiff's RFC. The ALJ systematically moved through and looked at the other evidence in the record such as treatment notes, testimony, and

medical reports in order to reach his credibility conclusions, as is required in the Fourth Circuit. Mascio, 780 F.3d at 639-40. For the aforementioned reasons, the RFC having been expressed prior to the credibility analysis of the Plaintiff was harmless because the analysis that followed it was proper and based on substantial evidence.

### III. Step-Five Analysis

Plaintiff contends the ALJ did not pose a proper hypothetical question to the VE. (Doc. No. 16, p. 14). Particularly, Plaintiff argues the ALJ erred in that the questions posed to the VE were not inclusive of all of her alleged limitations. (Doc. No. 16, p. 14). Despite Plaintiff's contention, the ALJ presented a proper hypothetical question to the VE, and Defendant satisfies the burden of proof required under step-five of the sequential evaluation process.

Defendant's regulations permit the ALJ to use the services of a VE to help determine whether a claimant's work skills can be used in other work, and the specific occupations in which they can be used. 20 C.F.R. § 404.1566(e). Plaintiff's contention is that the question posed was incomplete for not having included the limitation stated by Dr. Alkassab that she would possibly miss more than four days of work a month. (Doc. No. 16, p. 15). However, the ALJ, as has been explained above, afforded little weight to the opinion of Dr. Alkassab due to its inconsistencies and conflict with other evidence in the record. (Tr. 29-30). Therefore, the ALJ is not obligated to include Dr. Alkassab's limitations into his question posed to the VE. See English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993) (holding the ALJ need only include those limitations deemed credible).

Lastly, Plaintiff argues the hypothetical question should have also included limitations to only occasional handling and fingering. (Doc. No. 16, p. 15). Plaintiff argues this limitation is pursuant to her treating physician's opinion. (Doc. No. 16, p. 15). However, neither Dr. Alkassab,

13

nor Dr. Davis opined as to her specific functional limitations in this area (Tr. at 436-39, 446-47). The medical records cited by Plaintiff from her treating physicians do mention hand pain and fatigue; and, as mentioned before, the evidence in record did not support the level of restriction alleged by Plaintiff. (Tr. 25-29).

For the reasons stated above, the ALJ properly posed questions to the VE and met the applicable burden of proof under step-five of the sequential evaluation process. Furthermore, the ALJ was not required to pose questions to the VE that included limitations that the ALJ found to have lacked credibility.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 16) is DENIED, Defendant's Motion for Summary Judgment (Doc. No. 19) is GRANTED, and the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Signed: February 15, 2018

Frank D. Whitney
Chief United States District Judge